```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF IOWA
                         WESTERN DIVISION


JERRY McCLAIN,                    )
and KRISTI McCLAIN,               )    NO. 1:04-cv-30019-RAW
                                  )
         Plaintiffs,              )    RULING ON DEFENDANT'S
                                  )    MOTION FOR SUMMARY
    vs.                           )    JUDGMENT
                                  )
WERNER CO.,                       )
                                  )
         Defendant.               )
```

This matter is before the Court on defendant's motion for summary judgment [20]. Also pending is defendant's motion to bar the testimony of plaintiffs' expert Harold Stillman [19] which is addressed by separate order. This is a products liability action involving plaintiff Jerry McClain's fall from an aluminum stepladder manufactured by Werner. Plaintiffs claim strict liability (Count II) and negligence (Count I) in the design and manufacture of an aluminum step ladder manufactured by defendant Werner Co. ("Werner") as well as breach of express warranty (Count III) and implied warranty of merchantability (Count IV). Plaintiff Kristi McClain has brought a claim for loss of consortium (Count V). Plaintiffs originally filed this lawsuit in the Iowa State Court in and for Audubon County. Defendant removed this case to federal court pursuant to 28 U.S.C. § 1441 on March 19, 2004. The Court has diversity jurisdiction. 28 U.S.C. § 1332(a)(1). The matter is before the undersigned pursuant to 28 U.S.C. § 636(c).

In its motion Werner argues the McClain's claims (1) are barred by Iowa's statute of repose, Iowa Code § 614.1(2A); (2) fail to state a claim upon which relief can be granted if the testimony of plaintiff's expert is barred; (3) are not supported by evidence of a reasonable alternative design in existence at the time the ladder was manufactured; and (4) are not supported by evidence that any alternative design would have prevented the accident which is the subject of this lawsuit. Plaintiffs resist. Hearing was held on November 21, 2005. The motion is fully submitted.

Preliminarily, the Court notes plaintiffs' only claim at this point is that the stepladder was defectively designed. In Wright v. Brooke Group, Ltd., 652 N.W.2d 159, 169 (Iowa 2002), the Iowa Supreme Court held, in substance, that under the Restatement (Third) of Torts: Product Liability §§ 1, 2 (hereinafter "Restatement") claims of strict liability and negligence based on defective design merged into a "design defect claim" and that a breach of implied warranty of merchantability claim based on a design defect required proof of the defect by the same tort liability standard. Id. at 169, 181-82. As the summary judgment issues concern the sufficiency of the proof of the alleged design defects, Counts I, II and IV are identical for the purposes of analyzing the summary judgment motion. The express warranty claim in Count III has not been briefed and the Court understands it is

not being pursued. The consortium claim in Count V is dependent on liability being established on the other claims.

## I. SUMMARY JUDGMENT STANDARD

Werner is entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that [Werner is] entitled to judgment as a matter of law." Erenberg v. Methodist Hospital, 357 F.3d 787, 791 (8th Cir. 2004) (citing Fed. R. Civ. P. 56(c)); see Legrand v. Area Resources for Community and Human Services, 394 F.3d 1098, 1101 (8th Cir. 2005). The Court must view the facts in the light most favorable to the McClains, and give them the benefit of all reasonable inferences which can be drawn from them, "that is, those inferences which may be drawn without resorting to speculation." Mathes v. Furniture Brands Int'l, Inc., 266 F.3d 884, 885-86 (8th Cir. 2001) (citing Sprenger v. Federal Home Loan Bank of Des Moines, 253 F.3d 1106, 1110 (8th Cir. 2001)); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); John Q. Hammons Hotels, Inc. v. Acorn Window Systems, Inc., 394 F.3d 607, 610 (8th Cir. 2005); Erenberg, 357 F.3d at 791; Tademe v. St. Cloud State University, 328 F.3d 982, 987 (8th Cir. 2003). An issue of material fact is genuine if it has a real basis in the record. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita, 475 U.S. at 586-87 (1986)). A genuine issue of fact is material if it "might affect the outcome

of the suit under governing law." Hartnagel, 953 F.2d at 395 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)); see Hitt v. Harsco Corp., 356 F.3d 920, 923 (8th Cir. 2004).

     In resisting summary judgment the McClains must "go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue of material fact." Rouse v. Benson, 193 F.3d 936, 939 (8th Cir. 1999); see Hesse v. Avis Rent A Car System, Inc., 394 F.3d 624, 629 (8th Cir. 2005); Hitt, 356 F.3d at 923. In assessing the motion for summary judgment the Court must determine whether a fair-minded trier of fact could reasonably find for the McClains based on the evidence presented. Anderson, 477 U.S. at 248; Herring v. Canada Life Assurance Co., 207 F.3d 1026, 1030 (8th Cir. 2000).

## II.  FACTUAL BACKGROUND

     The ladder which is the subject of the present lawsuit is a six-foot aluminum step ladder Model 356, manufactured by Werner in January 1987. (Def. App. at 11, 73-74). The ladder left Werner's manufacturing facility in February 1987. (Id. at 73-74). Plaintiff Jerry McClain purchased the ladder, although the date is unclear from the summary judgment record. (Id. at 48; Pl. App. at 10-11, 37-38). He does recall it was purchased at either a Menards or UBC store in Atlantic, Iowa. (Def. App. at 47). He does not recall

speaking to anyone from the store about the ladder or reading any literature regarding the ladder at the time he purchased it. (Id. at 48).

On January 24, 2002 Mr. McClain was using the ladder to install a garage door on a pole barn which had recently been built on his property. (Def. App. at 49). The barn was not heated, so Mr. McClain set up a space heater to warm the work area. (Id. at 50). The ground in the work area consisted of grass and dirt. (Id. at 51). Mr. McClain planned to install an L-bracket on the torsion bar above the garage door. (Id. at 52). As he began his work, he noticed the dirt in the work area had started to settle, so he "kicked" some dirt around and then tapped it down with a sledgehammer in an attempt to make the ground level. (Id. at 55). He then set up the ladder in the dirt. (Id. at 52). McClain climbed to the third step of the ladder before realizing that he did not have the necessary bolts; he then began to descend the ladder. (Id. at 53). As he descended, he was not pulling or pushing on the ladder. (Id. at 54). He placed his right foot down on the second step and then felt the ladder lean to his right. (Id.) McClain leaned to his left to counteract the ladder's movement to the right. (Id.) McClain fell to the ground with the ladder while his feet were still on the steps, sustaining personal injury. (Id.) This lawsuit followed.

Plaintiffs' expert, Mr. Stillman, has testified the ladder was defectively designed because it should have had a wider flare (<u>i.e.</u>, wider at the base) and a wider step which, he says, would have improved stability and balance. In a companion ruling entered this date the Court has found Mr. Stillman's product defect and causation testimony is not sufficiently reliable to be admissible under Fed. R. Evid. 702.

### III. DISCUSSION AND ANALYSIS

**A.   <u>Statute of Repose</u>**

Defendant first claims that Iowa's fifteen-year statute of repose bars all of plaintiffs' claims. Iowa Code § 614.1(2A)(a) provides:

> [Actions] founded on . . . injuries to the person . . . brought against the manufacturer, assembler, designer, supplier of specifications, seller, lessor or distributor of a product based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, . . . based on the theories of strict liability in tort, [or] negligence . . . shall not be commenced more than fifteen years after the product was first purchased, leased, bailed, or installed for use or consumption unless expressly warranted for a longer period of time . . . .

"[A] statute of repose 'terminates any right of action after a specified time has elapsed, regardless of whether or not there has as yet been an injury.'" <u>McKiness Excavating v. Morton Bldgs.</u>, 507 N.W.2d 405, 408 (Iowa 1993)(quoting <u>Hanson v. Williams County</u>, 389

N.W.2d 319, 321 (N.D. 1986)); see Albrecht v. General Motors Corp., 648 N.W.2d 87, 90 (Iowa 2002). This differs from a statute of limitations which "bars, after a certain period of time, the right to prosecute an accrued cause of action." Albrecht, 648 N.W.2d at 90 (quoting McKinness, 507 N.W.2d at 408). "[A] statute of limitations affects only the remedy, not the right, . . . whereas a statute of repose affects the right itself, extinguishing existing rights or preventing rights from arising." Albrecht, 648 N.W.2d at 90 (citing Schulte v. Wageman, 465 N.W.2d 285, 287 (Iowa 1991)).

The ladder in question was manufactured in January 1987 and left Werner's manufacturing facility February 28, 1987. Defendant argues that the fifteen-year statute of repose began running February 28, 1987 and that plaintiffs had no right to sue after February 28, 2002. This action was commenced in state court on January 23, 2004.

Plaintiffs argue that the statute of repose is an affirmative defense which defendant has failed to plead in its answer, resulting in waiver of the defense under Iowa law. Dutcher v. Randall Foods, 546 N.W.2d 889, 893 (Iowa 1996); Iowa R. Civ. P. 1.421(1), (4). Defendant responds that Iowa law does not govern disposition of procedural issues when the case is in federal court, Hiatt v. Mazda Motor Corp., 75 F.3d 1252, 1258 (8th Cir. 1996), and that Fed. R. Civ. P. 56 does not require an affirmative defense to

be asserted before a summary judgment motion is filed. (Def. Reply Brief at 1-2).

The Court will pass beyond the procedural issue to the merits. This Court has previously interpreted Iowa's statute of repose in Hamilton v. Werner Co., 268 F. Supp. 2d 1085 (S.D. Iowa 2003), and having considered the matter again adheres to the views expressed therein. In Hamilton, as in this case, Werner argued that for purposes of § 614.1(2A)(a), the trigger date for application of the statute was the date on which the subject ladder was sent into the stream of commerce, i.e., was purchased by its distributor. The Court rejected Werner's interpretation of the statute, and held the statute of repose commenced running at the time a product was "first purchased . . . for use or consumption," which in the case of a consumer product would ordinarily be when the first consumer to use the product purchased it. Id. at 1089, 1091.

When the ladder in question was first purchased for use or consumption is not established in the summary judgment record. Werner argues that because plaintiffs have failed to offer any evidence concerning when they purchased the ladder, they should not be allowed to defeat the defense by simply denying knowledge of when the purchase was complete. However, it is defendant who has the burden of proof on its affirmative defense. John Q. Hammons Hotels, Inc. v. Acorn Window Systems, Inc., 394 F.3d 607, 610 (8th

Cir. 2005). A fact issue is generated on the date of the relevant first purchase which prevents summary judgment.

**B.    Lack of Expert Testimony**

As noted, the Court has separately ruled that the design defect and causation testimony of plaintiffs' expert, Harold Stillman, is inadmissible under Fed. R. Evid. 702. [hereinafter "Expert Ruling"]. Defendant argues that without expert testimony, plaintiffs have no evidence to support their defective design claims. In considering claims based on diversity jurisdiction, this Court applies the substantive law of the forum state. Fogelbach v. Wal-Mart Stores, Inc., 270 F.3d 696, 698 (8th Cir. 2001). In Wright, supra, the Iowa Supreme Court adopted the Restatement §§ 1 and 2 to apply in product defect cases.

> Under these sections, a plaintiff seeking to recover damages on the basis of a design defect must prove "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor . . . and the omission of the alternative design renders the product not reasonably safe."

652 N.W.2d at 169 (quoting Restatement § 2(b)). The Iowa Supreme Court noted that the Restatement language was in accord with earlier Iowa decisions requiring proof of a reasonable, safer alternative design. See Hawkeye Bank v. State, 515 N.W.2d 348, 352 (Iowa 1994) (requiring "proof of an alternative safer design that is practicable under the circumstances" in negligent design case);

Hillrichs v. Avco Corp., 478 N.W.2d 70, 75 (Iowa 1991)(requiring "proof of an alternative safer design" under a theory of enhanced injury caused by a design defect). To survive summary judgment, the evidence in the summary judgment record must be sufficient to demonstrate a genuine issue of material fact about (1) whether a reasonable alternative safer design could have been practically adopted at the time of sale which would have reduced or avoided the foreseeable risk of harm and (2) the omission of the alternative design made the ladder not reasonably safe. (See Expert Ruling at 5).

The ladder in suit was designed and constructed in accordance with the design standard for portable metal ladders of the American National Standards Institute (ANSI) set out in ANSI 14.2-1982. It is uncontested that the ladder conformed to the ANSI minimum design requirements. Without expert testimony plaintiffs have no evidence of a reasonable alternative safer design or to support a conclusion that Werner's ladder is "not reasonably safe." See Jaurequi v. Carter Mfg. Corp., 173 F.3d 1076, 1085 (8th Cir. 1999)(affirming summary judgment after exclusion of expert testimony regarding design defect); Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 298 (8th Cir. 1996), cert. denied, 520 U.S. 1196 (1997)(affirming summary judgment where plaintiffs did not present any evidence, apart from expert's inadmissible opinions, to support a finding of defective design). Plaintiffs do not explain what

evidence, other than Stillman's testimony, might generate a question of material fact on these issues.

Plaintiffs have also not presented any admissible evidence of a reasonable alternative design. Without any reasonable alternative design, plaintiffs cannot succeed on their defective design claim. Wright, 652 N.W.2d at 169; see also Giles v. Miners, Inc., 242 F.3d 810, 813 (8th Cir. 2001)(affirming summary judgment for defendant when plaintiff's expert was barred from offering an alternative design); Dancy v. Hyster Co., 127 F.3d 649, 653 (8th Cir. 1997), cert. denied, 523 U.S. 1004 (1998)(affirming summary judgment where plaintiff could not establish existence of reasonable alternative design).

As plaintiffs point out, expert testimony is not always required to establish the feasibility of a reasonable alternative safer design. See Restatement § 2, cmt. f. In this regard plaintiffs refer the Court to the Iowa Supreme Court's opinion in Reed v. Chrysler Corp., 494 N.W.2d 224 (Iowa 1992). Reed was a crashworthiness design case involving a Jeep rollover in which the vehicle's fiberglass top broke, enhancing injury to a passenger. Id. at 225-26. The plaintiff presented evidence that an alternative steel hardtop had been "designed, tested and sold for twenty years [by the defendant manufacturer] prior to the accident" and indeed the industry standard at the time of sale was steel tops. Id. at 227-28. Because the only difference in design was the material

involved -- steel vs. fiberglass -- the Court concluded the practicality and feasibility of the alternative design "were not beyond the understanding of an average juror." Id. at 228. In so holding, the Reed court quoted favorably from an Iowa Court of Appeals opinion which observed that "when the issues presented relate to matters which require only common knowledge and experience to understand them, the testimony of experts is not essential." Id. at 227 (quoting Wernimont v. Int'l Harvester Corp., 309 N.W.2d 137, 141 (Ia. App. 1981), in turn quoting Lynd v. Rockwell Mfg. Co., 276 Or. 341, 349, 554 P.2d 1000, 1005 (1976)). In contrast to Reed, Werner has not designed and tested a wider-based ladder except on an experimental basis, has not sold such ladders, and a wider-based ladder is not the industry standard. Moreover, the design here has nothing to do with material, but rather the structure of the ladder.

In the absence of expert testimony, "the plaintiff must supply sufficient evidence to satisfy the trial court that the jury, with its common knowledge, could reasonably find an alternative design to be practical and feasible." Giles, 242 F.3d at 813 (citing Wernimont, 309 N.W.2d at 141). "Lay jurors . . . are not likely to possess 'common understanding' about how products are designed." Dancy, 127 F.3d at 653. Stillman acknowledged that increasing a ladder's base width is perceived by some experts in the industry to increase the risk of overreaching to the side of

12

the ladder, (Pl. App. at 75), and there are questions about the utility and consumer acceptance of wider-based ladders. (Def. App. at 14-15). The purpose of the ANSI standard under which the ladder was designed "is to provide reasonable safety for life, limb, and property" and it purports to prescribe "rules governing the safe construction, design, testing, care and use of portable metal ladders . . . ." (Id. at 27). The standard was the product of extensive testing and research involving numerous experts and persons involved in the ladder industry, including Mr. Stillman. (Pl. App. at 105; Def. App. at 21-23; Expert Ruling at 8-14). The forward to the standards described the testing as a "massive and technically difficult task." (Def. App. at 21). It follows from this history that the assessment of an alternative stepladder design for safety, practicality and feasibility is not likely to be within the common knowledge and experience of jurors. Where the industry standard for safe design is arrived at only after extensive work by experts in the field, that the standard fails of its stated purpose to provide a reasonably safe product is a conclusion that ought to be supported by expert testimony based on reliable data, methods and principles.

Without expert testimony, plaintiffs have not shown that a genuine issue of material fact exists as to either the safety of defendant's ladder design, or the existence of a reasonable

alternative safer design. Accordingly, summary judgment is appropriate on all counts of the removed Petition.

### IV. CONCLUSION

Defendant's motion for summary judgment is **granted**. The Clerk shall enter judgment dismissing the Petition (Complaint).

IT IS SO ORDERED.

Dated this 12th day of January, 2006.

_____
ROSS A. WALTERS
UNITED STATES MAGISTRATE JUDGE